DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**STATE OF FLORIDA,**
Appellant,

v.

**DOUGLAS DALEY,**
Appellee.

No. 4D19-3590

[September 23, 2020]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Marina Garcia Wood, Judge; L.T. Case No. 19-1325 CF10A.

Carey Haughwout, Public Defender, and Christine C. Geraghty, Assistant Public Defender, West Palm Beach, for appellant.

Ashley Moody, Attorney General, Tallahassee, and Jessenia J. Concepcion, Assistant Attorney General, West Palm Beach, for appellee.

FORST, J.

The State of Florida appeals a trial court order that granted Defendant Douglas Daley's motion to suppress in a prosecution for tampering with physical evidence. The court ruled that the bicycle stop was not prolonged, but that it was based on an overly vague "Be on the Lookout" notice ("BOLO"). Therefore, the trial court determined that there was insufficient reasonable suspicion to justify the stop and suppressed all evidence obtained from the stop as "fruit of the poisonous tree."[1] Because we find the police had reasonable suspicion to justify the stop, we reverse and remand for further proceedings in this case.

**Background**

Two Fort Lauderdale Police Department officers set up a perimeter checkpoint about three blocks away from a reported residential burglary.[2]

---

[1] *Wong Sun v. United States*, 371 U.S. 471 (1963).
[2] At times the offense was identified as an attempted burglary.

The BOLO described the burglary suspect as "a black male, approximately 5'11", and wearing a grey hooded sweatshirt." One of the officers testified that he and his colleague observed someone whom they believed matched this description, riding a bicycle without a front-facing headlight, in violation of section 316.2065(7), Florida Statutes (2018). This person was later identified as Defendant. The officers further observed Defendant riding his bicycle westbound from the area of the recently reported burglary, so they conducted a traffic stop at 1:24 a.m.

At the suppression hearing, one of the officers testified that Defendant was stopped because "[h]e did not have a light on his bike and, again, like I said, he matched the description of the suspect, the clothing of the suspect in the burglary by the victim." The officer later clarified that he thought Defendant matched the BOLO because he was wearing a grey hooded sweatshirt and that he could not tell how tall Defendant was while he was riding the bicycle. The officer further testified that he advised Defendant "the reason why I was stopping him; that he matched the description and he was coming from the area where the burglary occurred. I also advised him that he was being stopped [for] not having the headlight and the tail light [sic] on the bike."

The officers called for backup. Less than ten minutes after the initial stop, a purported witness to the burglary arrived. However, the witness did not identify Defendant as the burglar. The officers continued to hold Defendant while a citation was being prepared for the bicycle light infraction. During this time frame, one of the officers who had arrived as backup observed a "small off white waxy looking object" in Defendant's mouth. Defendant refused the officer's order to spit the item out and instead swallowed it. Defendant was therefore arrested and charged with tampering with or fabricating physical evidence, but he was not charged with any crimes related to the burglary or the lack of a bicycle headlight.

In moving to suppress, Defendant argued that he was unlawfully stopped and detained based on a legally insufficient BOLO. If the stop and arrest were based on the alleged bicycle infraction, he argued that it would be illegal, as such an offense is non-criminal, and a person cannot be arrested for it.

After a hearing on Defendant's motion to suppress, the trial court entered an order granting the motion. The trial court ruled:

> The State asserts that the traffic stop was based on the municipal infraction and not the BOLO, and therefore, the

officer's subjective intent was irrelevant, and the stop was valid.

Defendant asserts that the traffic stop was based on the BOLO, which was "bare bones" and lacked specificity to provide [the officer who initiated the stop] with reasonable suspicion. Defendant also asserts the stop was prolonged.

Based on the testimony presented and the totality of the evidence, the Court finds that the traffic stop, which was not prolonged, was based on a legally insufficient BOLO, and hence, there was no reasonable suspicion to justify the traffic stop of Defendant. *See M.M. v. State*, 80 So. 3d 1125 (Fla. 4th DCA 2012); *Gaines v. State*, 155 So. 3d 1264 (Fla. 4th DCA 2015); *Pantin v. State*, 872 So. 2d 1000 (Fla. 4th DCA 2004). Therefore, the Court finds that all evidence observed or obtained by the police from the Defendant during the traffic stop was the "fruit of the poisonous tree" and shall be suppressed and excluded at trial.

This appeal by the State followed.

## Analysis

"The trial court is vested with the authority to determine the credibility of the witnesses and the weight of the evidence in ruling on a motion to suppress." *Delorenzo v. State*, 921 So. 2d 873, 876 (Fla. 4th DCA 2006). An appellate court is required to accept the trial court's determination of historical facts and the inferences drawn therefrom, but it reviews *de novo* the application of the law to those facts. *Id.*

The officers had established a perimeter three blocks away from the site of a reported burglary. The BOLO identified the burglary suspect as a black male, 5'11", wearing a grey hooded sweatshirt. The officers then stopped Defendant at 1:24 a.m.—a black male wearing a grey hooded sweatshirt and riding a bicycle from the direction of the recently reported burglary. Further, the trial court found that Defendant was 5'10". Thus, the State argues, the officers had reasonable suspicion to briefly stop Defendant because he matched the gender, race, height, and clothing identified in the BOLO, while being mere blocks away from where the burglary had just occurred, and while riding his bike away from the burglary scene. There is no evidence in the record that supports the trial court's conclusion that the BOLO was "bare bones" or "legally insufficient." *See, e.g., Hunter v. State*, 660 So. 2d 244, 249 (Fla. 1995) (discussing the

3

factors to be considered in determining when a BOLO alert provides law enforcement officers with reasonable suspicion to stop an individual).

Additionally, Defendant was riding the bicycle without lights at night, a clear violation of Florida's bicycle regulations. *See* § 316.2065(7), Fla. Stat. (2018) ("Every bicycle in use between sunset and sunrise shall be equipped with a lamp on the front exhibiting a white light visible from a distance of at least 500 feet to the front and a lamp and reflector on the rear each exhibiting a red light visible from a distance of 600 feet to the rear."); *Thomas v. State*, 614 So. 2d 468, 470–71 (Fla. 1993) (law enforcement may detain an individual "for the purpose of issuing a ticket, a summons or a notice to appear" with respect to violations of municipal ordinances that are noncriminal infractions); *Ray v. State*, 849 So. 2d 1222, 1224 (Fla. 4th DCA 2003) (in situation where the defendant was "stopped for riding his bicycle at night without the proper lights," there was "no question that the stop itself was valid").

Under the circumstances discussed herein, we are not persuaded by the argument that the officers lacked reasonable suspicion to stop Defendant, either based on the BOLO or the bicycle light violation. Certainly, the combination of the two provided ample reasonable suspicion to justify the traffic stop.

None of the three opinions cited by the trial court support a contrary conclusion as they are all materially factually distinguishable from the case at bar. *M.M. v. State*, 80 So. 3d 1125 (Fla. 4th DCA 2012), involved a stop that "rested entirely on the description from the BOLO," with the BOLO being limited to the suspect's gender and race. *Id.* at 1127. The BOLO here contained substantially more detailed information, and Defendant was stopped based on both the BOLO *and* the bicycle light infraction. In *Gaines v. State*, 155 So. 3d 1264 (Fla. 4th DCA 2015), the BOLO identified a suspect who fled on foot, wearing a long-sleeved dark T-shirt; the defendant was stopped while riding in a van, wearing a white T-shirt. *Id.* at 1266–67. No such discrepancy exists here. Moreover, unlike the instant case, the arresting officers in *Gaines* "did not see [the defendant] commit any traffic infractions or engage in any suspicious behavior." *See id.* at 1267. Finally, in *Pantin v. State*, 872 So. 2d 1000 (Fla. 4th DCA 2004), the court found the stop was based solely on an insufficient stolen vehicle BOLO, most notably lacking "information about the speed, direction, or route of the vehicle." *Id.* at 1003. Here, the officers stopped Defendant in close proximity to, and traveling westbound away from, the purported crime scene.

**Conclusion**

4

Due to the BOLO and the bicycle light infraction, the law enforcement officers had reasonable suspicion to stop Defendant. Thus, the trial court erred by granting Defendant's motion to suppress based solely on the conclusion that "there was no reasonable suspicion to justify the traffic stop of Defendant." This case is remanded for further proceedings with respect to the charge of tampering with or fabricating physical evidence.

*Reversed and Remanded for further proceedings.*

LEVINE, C.J., concurs.
GROSS, J., dissents with opinion.

GROSS, J., dissenting.

Citing *Delorenzo v. State*, 921 So. 2d 873, 876 (Fla. 4th DCA 2006), the majority correctly states the law that an "appellate court is required to accept the trial court's determination of historical facts and the inferences drawn therefrom, but it reviews *de novo* the application of the law to those facts."

Then the majority ignores that law.

At the hearing on the motion to suppress, the central issue was the credibility of the arresting officer on the basis for the stop. The officer testified that "the basis of the stop was due to the infraction" of riding a bicycle without a headlight. The officer did not issue a citation for the light infraction. Nor was the absent bicycle light mentioned in the probable cause affidavit. There was also some testimony that the stop was based on the BOLO.

The trial judge questioned the officer closely about the basis for the stop. She made an express finding of fact that the basis of the stop was the BOLO, not the traffic infraction. Just as she disbelieved the officer's testimony about the infraction, the trial judge was entitled to disbelieve the police officer about the content of the BOLO.

Here, the trial judge properly acted as a "gatekeeper[] of the Fourth Amendment" by "critically evaluat[ing]" the testimony at the suppression hearing. *Ruiz v. State*, 50 So. 3d 1229, 1233 (Fla. 4th DCA 2011). Contrary to the law, the majority has reweighed the evidence.

Some changes in the law are momentous. *See Brown v. Bd. of Education*, 347 U.S. 483 (1954). Others, as in this case, come into the law

like Carl Sandburg's fog, "on little cat feet."  Carl Sandburg, *Fog*, Poetry Foundation, https://www.poetryfoundation.org/poems/45032/fog-56d2245d7b36c (last visited September 4, 2020).

*      *      *

***Not final until disposition of timely filed motion for rehearing.***